UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-21721-CIV-MARRA

KATHLEEN ANNE SMITH CUTULI,

    Plaintiff,

vs.

MEHRDAD ELIE,

    Defendant.
_____/

## OPINION AND ORDER

THIS CAUSE is before the Court on appeal by *Pro Se* Appellant Kathleen Anne Smith-Cutuli, ("Smith-Cutuli") of the December 26, 2012 opinion and order of the bankruptcy court overruling Smith-Cutuli's objection to claim number 3-1 filed by Appellee Creditor Mehrdad Elie ("Elie") in Smith-Cutuli's main bankruptcy case (Opinion, DE 1). Also before the Court is Appellee's Motion to Strike (DE 22). The Court has carefully considered the appeal, the briefs of the parties, the entire record on appeal, and is otherwise fully advised in the premises.

**I.    Background**

The facts, based upon the parties' respective statement of facts in their appellate briefs and the appellate record, are as follows:

Smith-Cutuli and Elie were business partners for 17 years ending in 2005, when the business was sold. (DE 9 ¶ 2.) Litigation later ensued between the parties in state court resulting in the following judgments against Smith-Cutuli and in favor of Elie.

On August 3, 2009, following a five week jury trial, the San Mateo Superior Court in the state of California entered a judgment in favor of Elie against Smith-Cutuli in the amount of

$5,814,452.00 (hereinafter, the "San Mateo Judgment").[1] (DE 2-6 at 79-80.) After the San Mateo Judgment issued, interest accrued, and as a result of a number of collection efforts, monies were collected and credited against the judgment. (DE 2-6 at 79-99.) On June 29, 2011, two years after the San Mateo Judgment issued, both Smith-Cutuli and her counsel were served with a renewal of the San Mateo Judgment in the amount of $2,688,526.40 (hereinafter, the "Renewal Judgment"). (Opinion at 4; DE 2-6 at 96-98, 100.) By not objecting to the amount of the renewed judgment within the statutory 30 day period for making such objections, Smith-Cutuli defaulted. (Id.) The renewal of the judgment acted to re-establish the correct amount under the San Mateo judgment at that time.

On October 13, 2011, the Napa Superior Court in California entered a judgment in favor of Elie against Smith-Cutuli,[2] her husband, and various entities owned by the two (hereinafter "Napa Judgment"). (Opinion at 4; DE 2-6 at 105-109.) The Napa Court found that as of October 13, 2011 the amount of the San Mateo Judgment owed to Elie was $2,772,496.72 and relied upon that finding in its judgment. (Id.) The Napa Court also found Smith-Cutuli, her husband, and all of her businesses to be alter egos of each other and were jointly and severally liable to Elie for $14,814,107.48 in damages. (Id.)

On September 12, 2011, Smith-Cutuli filed a voluntary Chapter 7 bankruptcy petition which initiated the underlying bankruptcy case, No. 11-35256-BKC-AC. (DE 9, ¶ 1). On March 13, 2012, Elie filed his proof of claim with the bankruptcy court which became claim number 3-1 (hereinafter the "claim") in Smith-Cutuli's main bankruptcy case below. (Opinion at 2.)

On May 14, 2012, Smith-Cutuli filed a document with the bankruptcy court titled "Request Hearing on Proving Debtor Elie Has Been Paid In Full (sic)" in closed Adversary Case Number

---

[1] This judgment was not submitted as an exhibit on appeal.
[2] This was a default judgment against Smith-Cutuli. Smith-Cutuli actually appeared at trial, but then withdrew her appearance in favor of a "special appearance" by her attorney who argued evidentiary issues.

2

11-031303. (Id. at 1). Smith-Cutuli represented to the bankruptcy court that "the debt owing to Elie had been paid and the obligation satisfied" and further requested "the opportunity to prove to the Court that it has been paid." (DE 20 at 1-2.) Conscious of the Smith-Cutuli's status as a *pro se* litigant, the bankruptcy court exercised its discretion and ordered that the document be considered an objection to Elie's claim. (Opinion at 2.) The bankruptcy court docketed the objection in Smith-Cutuli's main bankruptcy case, and ordered that an evidentiary hearing be held to allow Elie to establish his claim and Smith-Cutuli to support her objection to the claim. (Id. at 1).

The evidentiary hearing on Smith-Cutuli's objection to the claim commenced August 1, 2012.[3] (Id. at 2.) In Smith-Cutuli's opening statement, she framed the issues she intended to present in support of her objection as follows:

> I will convince the Court that as of December 1, 2010, the original San Mateo judgment was paid in full, including interest, and that in fact, Mr. Elie was overpaid at that time. This was also long before the Napa judgment was entered, and I believe that if there was no damage, there should never had (sic) been a trial [resulting in the Napa Judgment]…
>
> Furthermore, with respect to the Napa judgment, legal counsel in California did an analysis of the case and determined that I was denied due process with respect to the punitive damages section of the award, and that it may be… voidable…

(Opinion at 2-3, citing DE 2-6 at 58-59).

Elie then presented testimony and evidence showing he had two valid judgments against Smith-Cutuli, including alter-ego findings against her, her husband, and various entities, and a single claim for recovery of monies paid on behalf of her. (Opinion at 3; De 2-6 at 68-69.) Elie's claim comprised of a secured amount of $2,740,823.76 and an unsecured amount of $16,939,107.48. (Opinion at 3-4; DE 2-6 at 76, 79-99.) Elie further contended that Smith-Cutuli

---

[3] The Evidentiary Hearing continued on October 19, 2012 and November 26, 2012 to accommodate Smith-Cutuli's request for up to three days of testimony to prove her case (collectively, the three days of evidentiary hearings will be referred to as the "Evidentiary Hearing").

was legally barred from challenging the amount owed on the San Mateo Judgment at any point prior to, and by virtue of two subsequent judgments entered against Smith-Cutuli: The Napa Judgment entered October 13, 2011 and the renewed San Mateo Judgment entered in June of 2011. (Id.) Elie asserted that neither judgment was ever challenged through permissible state court procedures and both judgments conclusively established the amounts owed on the original San Mateo Judgment as of their respective entry dates. (Id.)

In response, Smith-Cutuli presented testimony and evidence regarding various real property transactions or execution sales where Smith-Cutuli and others testified that the amount realized from the execution sales was less than the available equity based on Smith-Cutuli's opinion of the "fair market value" on each of the properties. (Opinion at 4; DE 2-3 at 180-230.)

At the conclusion of the evidentiary hearing, the bankruptcy court found that Elie had presented sufficient evidence to support his claim and that Smith-Cutuli had failed to carry her burden of supporting her objection. (Opinion at 15.) The bankruptcy court made findings that the Napa Judgment and San Mateo Judgment were valid, enforceable, properly served, and properly subjected Smith-Cutuli to the jurisdiction of those respective courts. (Id. at 7.) Neither judgment was "void, invalid, or otherwise the product of a violation of Debtor's right to due process." (Id.) The bankruptcy court concluded that Smith-Cutuli was barred from challenging the amounts owed under the San Mateo Judgment as a result of the Renewal of Judgment and the Napa Judgment, which both established the amount owed as of a date subsequent to all of the objections raised by Smith-Cutuli. (Id. at 10-11.)

The bankruptcy court added that even if a challenge were permissible, the evidence adduced by Smith-Cutuli did not support such a challenge. (Id. at 2-5.) Smith-Cutuli provided no evidence that she paid more than the amounts credited to Elie, no evidence that Elie's

4

judgment or claim had been paid in full, and no evidence that any of the judgments at issue are invalid. (Id. at 6). In conclusion, Smith-Cutuli provided no relevant evidence in support of her objection to Elie's claim. (Id. at 6.)

Smith-Cutuli now appeals the bankruptcy court's underlying order, challenging the finding that the various judgments were enforceable.

## II. Standard of Review

The Court reviews the Bankruptcy Court's factual findings for clear error and its legal conclusions *de novo*. *In re Globe Manufacturing Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009); *In re Club Assoc.*, 951 F.2d 1223, 1228-29 (11th Cir. 1992). An appellate court may affirm the lower court "where the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected" by the lower court. *Bonanni Ship Supply, Inc. v. United States,* 959 F.2d 1558, 1561 (11th Cir. 1992).

## III. Discussion

In a bankruptcy proceeding, a proof of claim executed and filed in accordance with the Bankruptcy Rules constitutes prima facie evidence of the validity and amount of the claim Fed. R. Bankr. P. 3001(f); *In re Dorway,* Case No. 07-21140-BKC-AJC, 2008 WL 5111882, at * 2 (Bankr. S.D. Fla. July 14, 2008). A claim or interest, proof of which is filed under Bankruptcy Code section 501 is deemed allowed, unless a party with interest objects. 11 U.S.C. §502(a). "Once an objection is interposed either to the validity or the amount claimed, the presumption is overcome and the ultimate burden to establish with the requisite degree of proof the validity or the amount of the claim falls upon the creditor." *In re D.W. Walters, Enterprises, Inc.,* 343 B.R. 285, 288 (Bankr. M.D. Fla. 2006); *In re O'Callaghan*, 304 B.R. 500, 505 (Bankr. M.D. Fla. 2003). Once a creditor establishes the validity and amount of his claim, the party objecting to

the claim has the burden of presenting equivalent probative evidence to rebut the presumption of validity and amount. *In re Fleming,* 258 B.R. 488, 489 (Bankr. M.D. Fla. 2000).

The Court will first address the collateral estoppel issue.  Both before the bankruptcy court and now on appeal, Smith-Cutuli relies on evidence purportedly demonstrating that Elie's judgments had been fully satisfied.  The basis for this claim is Smith-Cutuli's contention that she did not receive full credit for payments made in satisfaction of the original San Mateo Judgment. However, the amount due under the original San Mateo judgment, taking into account any payments made in satisfaction of that judgment, was fully and fairly litigated when the San Mateo Renewal Judgment and the Napa Judgment were entered.  Thus, under the doctrine of collateral estoppel, the bankruptcy court did not err in finding that Smith-Cutuli is barred from challenging the state court findings found in the Napa Judgment.

It is well-established that a judgment entered by a court of competent jurisdiction based on the doctrine of collateral estoppel may have a preclusive effect prohibiting any further litigation of the issues decided. *In re Edger*, 228 B.R. 772, 774-75 (Bankr. M.D. Fla. 1998).  The Eleventh Circuit in *In re St. Laurent,* explained that if the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect. 991 F.2d 672, 676 (11th Cir.1993); *In re Touchstone,* 149 B.R. 721, 725 (Bankr.S.D.Fla.1993).

California law accords collateral estoppel effect to default judgments, at least where the judgment contains an express finding on the allegations. [4]  *Gottlieb v. Kest,* 141 Cal. App. 4th 110, 149 (2006) (citing *People v. Sims*, 32 Cal.3d 468, 477–481 (1982)).  California mandates

---

[4] The bankruptcy court applied Florida law of collateral estoppel.  The Florida standard of collateral estoppel applied by the bankruptcy court, however, is not materially different from the California standard. *Compare In re St. Laurent,* 991 F.2d 672, 676 (11th Cir. 1993) (describing Florida law of collateral estoppel) *with Lucido v. Superior Court*, 795 P.2d 1223, 1225 (Cal. 1990) (describing California law of collateral estoppel).

6

two requirements when a party seeks to invoke collateral estoppel based upon a default judgment. First, the party against whom the judgment was entered must have had a "full and fair opportunity to litigate the issues determined by the default judgment." *In re Cantrell*, 269 B.R. 413, 419 (B.A.P. 9th Cir. 2001). "Accordingly, a defaulting defendant will not be precluded from relitigating such issues unless the defendant 'has been personally served with summons or has actual knowledge of the existence of the litigation.'" *Id.* (quoting *Harmon*, 250 F.3d 1240, 1247 (9th Cir. 2001)). Second, the court in the prior action must have rendered an "express finding" on the issue, or the express finding requirement must have been waived. *Id.* "The express finding requirement is deemed waived where the court in the prior proceeding implicitly and necessarily decided the issue." *Id.*

In this case, evidence regarding the then-outstanding balance of the San Mateo Judgment was produced at the Napa Trial, and the Napa Court made the express finding that:

> ". . . the court has considered the evidence and finds that the outstanding underlying judgment debt owed as of October 12, 2011 to be $2,772,496.02, with interest accruing at a rate of $736.58 per day."

(Opinion at 11.)

Thus, the issue of the unsatisfied balance of the San Mateo judgment as of at least October 12, 2011 was identical to the issue Smith-Cutuli raised in her objection (claiming that the same judgment had been satisfied prior to October 12, 2011). (Id. at 12.) Furthermore, the issue was actually litigated, or Smith-Cutuli had the opportunity to litigate it. (Id.) As noted by the bankruptcy court, not only was a valid default judgment entered against Smith-Cutuli, but Smith-Cutuli actually appeared at trial, and then withdrew her appearance in favor of a "special appearance" by her attorney who argued evidentiary issues. (Id. at 12 n. 6.) Thus, Smith-Cutuli had ample opportunity to litigate the issues encompassed in the Napa judgment and simply chose

not to avail herself of that opportunity.[5] (Id.) For these reasons, the bankruptcy court did not err in overruling Smith-Cutuli's objection as a matter of law.

Next, Smith-Cutuli relies on evidence of various real property transactions or execution sales where she and others testified that the amount realized from the execution sale was less than the available equity in the property. The basis for this evidence was Smith-Cutuli's opinion of the "fair market value" of each property. Smith-Cutuli asserts that she was entitled to a credit in the amount of the hypothetical equity rather than the actual bid price collected through the execution sale. Smith-Cutuli additionally asserts that "there are a number of equitable doctrines, all of which were violated by Elie, which would allow the court to exercise its discretion on appeal and apply additional credits support this action." (DE 9 at 6-10.) According to Smith-Cutuli, the equitable doctrines of waste, abuse of process, equitable redemption, and setoff entitle her to a credit of what she deems to be the fair market value of the real estate at the time of the foreclosure. (DE 9 at 6-15).

Smith-Cutuli failed to provide any evidence or legal authority suggesting that an amount other than the actual sales proceeds should have been credited against the outstanding judgments. At no point during the evidentiary hearing did any of Smith-Cutuli's witnesses provide testimony contradicting the calculations provided by Elie; nor did the witnesses provide testimony or evidence that Elie had been fully paid by Smith-Cutuli or that any of the judgments against

---

[5] Any claimed due process violation is meritless based upon the Napa Court's finding that Smith-Cutuli was the alter-ego of her husband and the various business entitles. In addition, her husband participated in the trial. Indeed, the Napa Court made extensive findings as to the alter-ego relationship between Smith-Cutuli, Mr. Cutuli and her various entities.

> [T]he court finds that there exists such a unity of interest and ownership between the entities and individuals that the separate personalities of each do not really exist, and there would be an inequitable result if the acts in question are treated as those of the entities or individuals along . . . absent such a finding, Smith and Cutuli will continue to be able to play their shell game of transferring assets between themselves and the various entities they control.

(Opinion at 8) (citing Bankruptcy trial exhibit 92).

Smith-Cutuli were void, invalid, or otherwise the product of a violation of Debtor's right to due process. After a thorough review of the record, the Court concludes the bankruptcy court did not err in finding this evidence insufficient to support Smith-Cutuli's objection.

## IV. Conclusion

Having reviewed the Bankruptcy Court's factual findings for clear error and legal conclusion *de novo*, the Court finds no error.  Based upon the foregoing, it is **ORDERED AND ADJUDGED** that that decision on appeal of the bankruptcy court is **AFFIRMED**.  In light of Appellant's *pro se* status, the Motion to Strike (DE 22) is **DENIED**.

This case is **CLOSED**, and all pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 14th day of February, 2014.

KENNETH A. MARRA
United States District Judge